## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

NATALIE SPENCE,

        Plaintiff,

    v.

STATE OF NEW JERSEY, et al.,

        Defendants.

No. 1:19-cv-21490-NLH-KMW

**OPINION**

**APPEARANCES**:

DAVID ANDREW BERLIN
MATTHEW BENJAMIN WEISBERG
WEISBERG LAW
7 SOUTH MORTON AVENUE
MORTON, PA 19070

GARY SCHAFKOPF
HOPKINS & SCHAFKOPF, LLC
11 BALA AVENUE
BALA CYNWYD, PA 19004

    *Attorneys for Plaintiff.*

DAVEON MAXICI GILCHRIST
JOHN P. CASCIO
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET ST
PO BOX 112
TRENTON, NJ 08625

    *Attorneys for Defendants.*

**HILLMAN**, **District Judge**

    This case comes before the Court on Defendants' motion to
dismiss Plaintiff Natalie Spence's claims for sexual harassment
and retaliation in violation of the New Jersey Law Against

Discrimination ("NJLAD") and Title VII of the Civil Rights Act
of 1964.  For the reasons expressed below, Defendants' motion
will be granted in part and denied in part.

**BACKGROUND**

On June 26, 2017, Plaintiff was hired as a Judiciary Clerk
in the Camden Vicinage Child Support Division of the Camden
County Probation Department.  Plaintiff alleges that within a
few days of beginning her job, Defendant John Callender, a co-
worker who had been assigned to train her in the position, began
to sexually harass her.  "For example, while Plaintiff, Natalie
Spence was sitting at her cubicle, Defendant, Callender
approached Plaintiff, stood in front of Plaintiff with his groin
in close proximity to Plaintiff's face, began asking her
inappropriate, personal questions and attempted to
inappropriately touch her."  (ECF No. 23 at ¶ 15).

After experiencing this initial behavior, Plaintiff
reported it to her supervisor, Renata Kiersnowski.  Rather than
taking any action, however, Kiersnowski told Plaintiff that
Callender was not a threat and that she should be patient with
him.  Over the course of the next few weeks, Callender's
behavior continued.  Plaintiff's Amended Complaint alleges that:

- "Callender (i) would approach Plaintiff, Natalie Spence
  from behind and push his groin into her while Plaintiff
  was attempting to file paperwork into a cabinet or other

2

> activities; (ii) would attempt to make unnecessary and
> [off-putting] physical contact; and, (iii) would blow
> kisses at Plaintiff";

- "On or about July 6, 2017, during the annual Probation
  Division BBQ, Defendant, Callender again approached
  Plaintiff, Natalie Spence and made sexually offensive
  comments and gestures to Plaintiff using a hot dog";

- At the same BBQ, Callender and "approached Plaintiff while
  in his undershirt and again made sexually offensive
  gestures towards Plaintiff, Natalie Spence's direction
  while straddling a chair" and "then, while staring at
  Plaintiff, Natalie Spence, stood, put on his workshirt,
  unzipped his pants, and began tucking in his shirt while
  making sexual noises."

Id. at ¶¶ 21-27.

On multiple occasion during this period, Plaintiff informed
Callender that his behavior was unwelcome and inappropriate, and
told him to stop touching her; Callender responded by telling
Plaintiff that no one would believe her complaints, because she
was on probation due to having only recently started in her
position.  Plaintiff again reported Callender's behavior to
Kiersnowski after the BBQ, but Kiersnowski again failed to take
any action.  Shortly after, in mid-July, Plaintiff received a
negative career progression report, which stated that she did

not meet expectations in various areas — Plaintiff alleges that
this report was given in retaliation for her second report
concerning Callender's behavior.

After the negative career progress report, Plaintiff
reported Callender's behavior to Defendant Cornell Williamson.
Then, in September of 2017, Williamson transferred Plaintiff to
the separate Administration Unit of the Camden County Probation
Department.  There, Plaintiff was apparently treated with
hostility by her co-workers, before ultimately being transferred
a third time to the Burlington County Superior Court.

At some point, Defendant filed a claim with the Equal
Employment Opportunity Commission, who provided her with a right
to sue letter.  Finally, on December 17, 2019, Plaintiff filed a
complaint in this Court.  (ECF No. 1).  After Defendants filed a
motion to dismiss that complaint, (ECF No. 22), Plaintiff filed
the currently operative Amended Complaint on July 9, 2020.  (ECF
No. 23).  The Court then issued an order denying the initial
motion to dismiss as moot.  (ECF No. 26).

Plaintiff's Amended Complaint names as Defendants the State
of New Jersey, the New Jersey State Judiciary, John Callender,
Renata Kiersnowski, and Cornell Williamson.  It specifically
brings claims against all defendants for both sexual harassment
causing a hostile work environment and retaliation in violation
of both the NJLAD and Title VII.  On September 10, 2020,

4

Defendants filed a second motion to dismiss all claims, (ECF No. 28), which Plaintiff has opposed.  (ECF No. 30).  The motion is fully briefed, and therefore ripe for adjudication.

## Discussion

### A. Subject Matter Jurisdiction

The Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367(a).

### B. Legal Standards Governing Motions to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do . . . ." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." <u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our decision in <u>Twombly</u> expounded the pleading standard for 'all civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d

6

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

C. **Analysis**

As described above, Plaintiff has asserted claims for sexual harassment and retaliation in violation of both Title VII

and the NJLAD.[1]  This Court's inquiry into claims of discrimination "is the same for claims filed under Title VII and the NJLAD as the New Jersey statute borrows the federal standard."  Tourtellotte v. Eli Lilly and Co., 636 F. App'x. 831, 843 (3d Cir. 2016).  Employment discrimination claims under both Title VII and NJLAD are governed by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Cotto v. Ardagh Glass Packing, Inc., No. 18-1037 (RBK/AMD), 2018 WL 381427, at *3 (D.N.J. Aug. 10, 2018) ("New Jersey courts have adopted the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as the starting point in actions brought under the LAD.") (citing Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 492 (1982)).  Accordingly, courts frequently analyze related claims under both statutes coextensively.  See Tourtellote, 636 F. App'x. at 843.

   While the first step in the McDonnell-Douglas framework requires the plaintiff to demonstrate the existence of a *prima facie* case of discrimination, the Third Circuit has explained

---

[1] The Amended Complaint references both Plaintiff's race and sex as potential bases for her discrimination claims.  (ECF No. 23 at ¶ 39).  However, as Defendants note, the complaint makes no other reference to Plaintiff's race, and contains no allegations that her race played a role in the alleged discriminatory conduct, instead focusing entirely on claims related to her sex. Accordingly, to the extent that Plaintiff intended to allege claims of racial discrimination under Title VII or the NJLAD, the Court finds that she has failed to adequately do so and will dismiss those claims without prejudice.

that, "at least for purposes of pleading sufficiency, a
complaint need not establish a prima facie case in order to
survive a motion to dismiss." Connelly v. Lane Const. Corp.,
809 F.3d 780, 788 (3d Cir. 2016). Since "[a] prima facie case
is 'an evidentiary standard, not a pleading requirement,'" the
Third Circuit has made clear that it is "not a proper measure of
whether a complaint fails to state a claim." Id. at 789
(quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002)
and then Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir.
2009)). Instead, "at this early stage of the proceedings, it is
enough for Connelly to allege sufficient facts to raise a
reasonable expectation that discovery will uncover proof of her
claims." Id.

    But "[w]hile Plaintiff need not establish the elements of a
*prima facie* case in [her] complaint, the Court nevertheless
finds that the McDonnell Douglas elements provide guidance in
assessing whether Plaintiff has stated a plausible claim under
the pleading standards of Twombly and Iqbal." Petruska v.
Rickett Benckiser, LLC, No. 14-03663 (CCC), 2015 WL 1421908, at
*6 (D.N.J. Mar. 26, 2015). Accordingly, the Court will center
its analysis of Plaintiff's claims and the present motion to
dismiss around the elements of a *prima facie* showing of each of
her specific claims.

1. **Claims Against Individual Defendants**

Before turning to the substance of Plaintiff's claims, the Court must first address the status of her claims as asserted against the individual defendants in this action.  As stated above, the Amended Complaint asserts Plaintiff's claims under both Title VII and the NJLAD against not only the State and the State Judiciary, but also against three individual employees.  However, in her brief opposing the motion to dismiss, Plaintiff states that she "respectfully withdraws her claims against Defendants, John Callender, Cornell Williamson, and Renata Kiersnowski without prejudice" — although without providing any explanation as to why.  (ECF No. 30 at 11).  Defendant, faced with this concession, argues that her claims must be dismissed with prejudice instead.

Regardless of the reason for Plaintiff's decision not to defend her claims against the individual defendants, the Court first notes that "Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability." Simon v. Shore Cab, LLC, No. 13-6290, 2014 WL 2777103, at *5 (D.N.J. June 19, 2014) (citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996); Newsome v. Admin. Off. of the Cts. of the State of N.J., 51 F. App'x 76, 79 n.1 (3d Cir. 2002); Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002)).  "Furthermore, courts in this

District routinely dismiss Title VII claims brought against individuals in their official capacities because 'Title VII provides for liability against employers, not supervisors. Naming a supervisor as a defendant in his official capacity is redundant especially when ... the employer is also named as a Defendant.'" Dukes v. New Jersey Transit, No. 16-08947, 2020 WL 4932525, at *2 (D.N.J. Aug. 24, 2020) (quoting Simon, 2014 WL 2777103 at *5). Accordingly, as these claims could not be sustained in a future complaint, Plaintiff's Title VII claims against the individual defendants will be dismissed with prejudice.

However, "[u]nlike its federal counterpart, the [NJLAD] does impose individual liability." Ross-Tiggett v. Reed Smith LLP, No. 15-8083, 2016 U.S. Dist. LEXIS 113554, at *19-20, 2016 WL 4491633 (D.N.J. Aug. 24, 2016); see N.J.S.A. 10:5-12e (NJLAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."). While Defendant argues that Plaintiff's failure to oppose these arguments requires dismissal with prejudice, the cases they cite in support of that argument simply hold that failure to oppose an argument for dismissal is a basis for granting the motion as to that claim; here, there is no question that Plaintiff has failed to oppose the motion to dismiss as to

her claims against the individual defendants, and her claims against them will be dismissed.  However, given that the NJLAD does impose individual liability against employees in some circumstances, and the Court will, as explained below, grant Plaintiff leave to file an amended complaint, the Court will dismiss those claims without prejudice.

   2. **Sexual Harassment Claims**

   The Court next turns to Plaintiff's claims against the State of New Jersey and the State Judiciary.  Plaintiff first alleges that Callender's actions constituted sexual harassment and created a hostile work environment for her.  To establish a claim for a hostile work environment based on sexual harassment under either Title VII or the NJLAD, a plaintiff must "show that 1) the employee suffered intentional discrimination because of his/her [membership in a protected class such as sex], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."  Larochelle v. Wilmac Corporation, 769 F. App'x. 57, 61 3d Cir. 2019) (quoting Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017)).  "The first four elements of this claim establish that a hostile work environment existed.  The fifth element ... establishes the basis on which to hold the employer

12

liable." Huston v. Procter & Gamble Paper Prods. Corp., 568
F.3d 100, 104 (3d Cir. 2009).

Unsurprisingly, the standard for establishing *respondeat superior* liability differs based on whether the individual performing the sexually harassing behavior is the plaintiff's supervisor or a non-supervisory co-worker. Id. When the individual alleged to be creating the hostile work environment is a co-worker, as Callender was here, the employer is liable "only if [(1)] the employer failed to provide a reasonable avenue for complaint or . . . [(2)] the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." In re Tribune Media Co., 902 F.3d 384, 400 (3d Cir. 2018).

In their moving brief, Defendants appear to entirely concede elements 1, 3, and 4, arguing only that "[i]n this matter, Plaintiff cannot meet the second and fifth elements." (ECF No. 28-4 at 11). And while Defendants briefly state that Plaintiff cannot demonstrate *respondeat superior* liability here, their moving brief presents no argument on this front whatsoever, instead focusing entirely on the question of whether the alleged harassment was severe or pervasive.

The Court notes that Defendants' reply brief further argues that Plaintiff does not adequately allege that she was demonstrably affected by Callender's behavior, that Callender's

13

statement that no one would believe Plaintiff's complaints about
his behavior was not related to her sex, and provides an actual
argument as to why Plaintiff has similarly not adequately pled
*respondeat superior* liability.  "However, it is well-established
that new arguments cannot be raised for the first time in reply
briefs." Pitman v. Ottehberg, No. 10-2538 (NLH/KMW), 2015 WL
179392, at *9 (D.N.J. Jan. 14, 2015) (quoting Elizabethtown
Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 458
(D.N.J. 1998)).  Accordingly, these three "[a]rguments raised
for the first time in [Defendants'] reply brief will be
disregarded."  Thomas v. Correctional Medical Services, Inc.,
No. 1:04-cv-3358 (NLH), 2009 WL 737105, at *13 (D.N.J. March 17,
2009) (citing Bayer AG v. Schein Pharmaceutical, 129 F. Supp. 2d
705, 716 (D.N.J. 2001)).[2]

     The remaining question at this stage then is whether
Plaintiff has alleged sufficient facts to raise a reasonable
expectation that discovery will uncover proof that the alleged
harassment was either severe or pervasive enough to have created
a hostile work environment.  "'[S]everity' and 'pervasiveness'

---

[2] The Court notes that, even if Defendants had put forth a
genuine argument in their moving brief regarding *respondeat
superior* liability, the argument as framed in their reply brief
would fail.  Plaintiff has clearly alleged that she reported her
harassment to multiple superiors on three separate occasions,
and that both Kiersnwoski and Williamson failed to take any
remedial action or to stop Callender's continued behavior.

are alternative possibilities: some harassment may be severe
enough to contaminate an environment even if not pervasive;
other, less objectionable, conduct will contaminate the
workplace only if it is pervasive." Castleberry, 863 F.3d at
264.  In analyzing the severity or pervasiveness of a
plaintiff's claims, "a court must consider the totality of the
circumstances, including 'the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance.'"
Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir.
2013) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23
(1993)).  The Court may not "parse[] out each event and view[]
them separately, rather than as a whole." Id. at 168.

Here, Defendants argue that Plaintiff's allegations
demonstrate neither severe nor pervasive harassment; according
to Defendants, "the comments and conduct alleged are minor
innocuous slights or possibly inappropriate isolated comments
and could not establish an abusive environment." (ECF No. 28-4
at 12-13).  Plaintiff, for her part, concedes that "no single
event described by Plaintiff[] would necessarily rise to the
level of severe," arguing instead that "the ongoing and regular
sexual comments and physical contacts rise to the level of
pervasive . . ."  (ECF No. 30 at 6).

Defendants are correct that, were Plaintiff's only allegations a series of claims that Callender had blown kisses at her, asked her "inappropriate, personal questions," and made sporadic "sexually offensive comments and gestures," such allegations without further detail certainly would not qualify as sufficiently pervasive to sustain claims under Title VII or the NJLAD.  As the Third Circuit has made clear, "[u]nless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim" on their own.  Chinery v. Am. Airlines, 778 F. App'x 142, 145 (3d Cir. 2019).  However, in attempting to downplay Callender's alleged harassment, Defendants have ignored the more serious of Plaintiff's allegations.

In her Amended Complaint, Plaintiff not only alleges that Callender attempted to inappropriately touch her on repeated occasions, but more specifically that he had also approached her "from behind and push[ed] his groin into her while Plaintiff was attempting to file paperwork into a cabinet or other activities."  (ECF No. 23 at ¶ 21).  In their reply brief, Defendants appear to dispute whether this is an allegation of actual contact or merely an attempt to do so, stating "[i]t is undisputed that Defendant Callender did not touch Plaintiff, as each incident she describes as an 'attempt.'"  (ECF No. 31 at 5).  While Plaintiff's opposition brief does refer to "continued

16

attempts to push a groin into [her] buttocks," this could just as easily be interpreted to refer to additional attempts to do so after he had initially made such inappropriate physical contact with her.  Given the Court's duty to interpret the complaint in the light most favorable to Plaintiff in assessing a motion to dismiss, the Court reads her allegations to assert actual physical contact on one at least one occasion, rather than mere attempts.

However, the question still remains whether, even assuming that Callender did in fact make such contact, Plaintiff has put forth "'sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence' of the elements of the prima facie case." Cotto, 2018 WL 3814278 at *3 (quoting Connelly, 809 F.3d at 789).  The Court finds that Plaintiff has failed to make such a showing at this stage.

As mentioned above, Plaintiff concedes that her allegations are insufficient to show severity, and instead relies on the argument that the harassment she suffered was pervasive enough to advance past the pleadings stage; Defendant, in moving to dismiss, largely relies on case law stating that allegations of a few isolated incidents do not meet the burden imposed on a plaintiff alleging the existence of a hostile work environment. Plaintiff, for her part, cites to no case law at all to demonstrate that she has met her burden in opposing the motion

to dismiss.  Instead, the section of her opposition brief addressing this element simply repeats word-for-word the allegations from her complaint, states that "[a]ny reasonable woman, after repeatedly telling a man to stop, would find continued attempts to push a groin into their buttocks while attempting to file as offensive and utterly beyond a mere violation of the civility code as Defendants argue," and further claims that Callender's conduct "occurred in private and in public."  (ECF No. 30 at 5-6).

The Court of course agrees that the physical contact described by Plaintiff is inappropriate and offensive, and has no place either inside or outside of the office.  However, that is not the standard by which claims under Title VII or the NJLAD are assessed.  The Third Circuit, for example, has previously held that pervasiveness had not been shown when a plaintiff suffered "no more than four incidents during the span of two weeks," even though those incidents involved a co-worker exposing herself to the plaintiff and grabbing his groin on separate occasions.  See Bacone v. Philadelphia Housing Authority, 112 F. App'x. 127, 129 (3d Cir. 2004).  Similarly, many other courts presented with cases involving isolated incidents of physical touching have, on summary judgment, ultimately found the conduct not sufficient to reach the level of severe or pervasive.  See  Saidu-Kamara v. Parkway Corp., 155

18

F. Supp. 2d 436, 439-440 (E.D. Pa. 2001) (defendant, over 18-
month span, touching plaintiff's breast; propositioning her for
sex; offering her money to go out with him; removing a bottle of
wine from his pants, asking her to join him later at a local
hotel for a "good time," and again touching her breasts and
buttocks insufficient); Bonora v. UGI Utilities, Inc., No.
CIV.A. 99-5539, 2000 WL 1539077, at *4 (E.D. Pa. Oct. 18, 2000)
(defendant touching plaintiff's hand, brushing his buttocks
against hers, and touching her waist insufficient); McGraw v.
Wyeth-Ayerst Lab., Inc., No. CIV. A. 96-5780, 1997 WL 799437, at
*6 (E.D. Pa. Dec. 30, 1997) (defendant kissing plaintiff,
touching her face, asking her out on dates, inquiring about her
marriage insufficient).

Of course, it must be noted that these cases were decided
on summary judgment, where the plaintiffs had the burden of
actually demonstrating their *prima facie* case.  However, while
Plaintiff is held to a lower burden at the pleadings stage, the
Court must still take into consideration the showing she will
need to make to prove her hostile work environment claim in
determining whether her allegations raise a reasonable
expectation that she will be able to prove that Callender's
harassment was sufficiently pervasive.

Even viewing Plaintiff's claims in the light most favorable
to her, the Court finds that she has not met that burden —

mainly because her complaint largely relies on generalized
allegations without sufficient details or specifics to assess
the actual pervasiveness of the conduct in question.  Starting
with the non-physical conduct, Plaintiff has only described two
specific incidents in detail: one in which Callender stood with
his groin near her face and asked her "inappropriate, personal
questions," and another in which, at an office BBQ, he "made
sexually offensive comments and gestures to Plaintiff using a
hot dog," later made "sexually offensive gestures" towards her
while straddling a chair, and then made "sexual noises" while
tucking his shirt in and staring at her.  Outside of these
incidents, Plaintiff relies on generalized allegations that he
would blow kisses at her, attempt to make inappropriate contact,
and make inappropriate sexual comments; and, of course, her
allegation that he had pressed his groin into her.

       However, Plaintiff's complaint includes no attempt to
describe how often any of these actions occurred, nor the exact
time frame over which the harassment took place.  For example,
while Plaintiff appears to imply that Callender's pushed his
groin into her on more than one occasion, she does not state
that specifically or explain how many times that occurred, and
her opposition brief, as quoted above, only states that he
attempted to do so again — not that he actually did.  Nor does

Plaintiff's complaint include any allegations regarding the impact of Callender's conduct on her ability to do her job.

Instead, the Amended Complaint merely implies that some forms of the alleged conduct occurred more than once, and alleges that Callender continued to harass her "on a regular basis until her transfer to Burlington County Superior Court" — without stating how "regular" the incidents were or when her transfer actually occurred.  (ECF No. 23 at ¶ 14).  But as the case law cited above makes clear, the number of incidents and the specific time frame they occurred within matters in determining whether harassment was so pervasive as to rise to the level of a Title VII or NJLAD violation, and even a handful of incidents of physical contact may not suffice.

Another court in this circuit recently faced with a sexual harassment claim denied a motion to dismiss where the plaintiff had alleged that he "was subject to sexual advances 'at least once or twice a week,'" that a co-worker had grabbed his buttocks, and where he had been threatened with violence. Hewitt v. BS Transportation of Illinois, LLC, 355 F. Supp. 3d 227, 236 (E.D. Pa. 2019).  That claim survived a motion to dismiss, however, not only because of the physical threat, but also because the plaintiff there alleged that the sexual advances occurred at least once or twice a week over a period of time spanning at least two years.  Id. at 231.  While Plaintiff

need not plead that she was harassed for that long of a time period, this case demonstrates the lack of specificity found here, where the Court has no ability to assess just how many incidents occurred, nor exactly how long the harassment continued for.

The Court recognizes that "detailed pleading is not generally required" to defeat a motion to dismiss. Connelly, 809 F.3d at 786. However, a plaintiff bringing an employment discrimination claim must still demonstrate a reasonable expectation that she will ultimately be able to prove her *prima facie* case. Plaintiff here appears to be alleging around four or five individual incidents in the span of her first two weeks of work, with the implication that more may have occurred, and then an undefined reoccurrence of this conduct after that time period. The specific allegations from the first two weeks, on their own, appear insufficient to prove pervasiveness under this Circuit's case law. See Bacone, 112 F. App'x. at 129 (pervasiveness not proven when a plaintiff suffered "no more than four incidents during the span of two weeks," even though those incidents involved a co-worker exposing herself to the plaintiff and grabbing his groin on separate occasions). And without further information as to how many other incidents there were, what "inappropriate, personal questions" were asked or what sexual comments were made, or some further allegations

22

regarding the extent to which Callender's behavior impacted Plaintiff's ability to work, this Court simply cannot find at this stage that Plaintiff has demonstrated a reasonable expectation that, after discovery, she will be able to meet the high bar of proving a hostile work environment claim.

Defendants' motion to dismiss the hostile work environment claims will therefore be granted.  However, as described above, it is entirely possible that Plaintiff may, in a further amended complaint with additional details, be able to meet her burden and put forth factual allegations that are adequate to proceed past the pleadings stage.  See Hewitt, 355 F. Supp. 3d at 236. Accordingly, the Court will dismiss Plaintiff's claims without prejudice, and will grant her leave to file an amended complaint, within thirty days, that addresses the deficiencies outlined in this Opinion.[3]

---

[3] The Court notes that Defendants further state that even if Plaintiff had pled a *prima facie* case of discrimination, Plaintiff's "claim fails as a matter of law because Defendants had legitimate non-discriminatory reasons for its actions and Ms. Davis cannot prove pretext."  (ECF No. 28-4 at 7).  "On a motion for summary judgment, if a plaintiff establishes a prima facie case of employment discrimination under Title VII, the defendant is entitled to assert a legitimate business reason for the plaintiff's termination as part of the burden shifting paradigm under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). However, such an analysis is not appropriate on a motion to dismiss."  Baldwin v. Gramiccioni, No. 16-1675 (FLW) (DEA), 2017 WL 120643, at *9 n.12 (D.N.J. Jan. 11, 2017).  See also Castleberry v. STI Group, 863 F.3d 259, 266 (3d Cir. 2017) ("Under the McDonnell-Douglas framework, a claim of employment

### 3. **Retaliation Claims**

Plaintiff next brings claims for retaliation under both Title VII and the NJLAD.  Retaliation claims under these statutes are again analyzed under the same standard and the McDonnell-Douglas framework.  Tourtellote, 636 F. App'x. at 841. A claim of discriminatory retaliation has three elements: (1) plaintiff "engaged in conduct protected by Title VII [or the NJLAD]; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."  Connelly, 809 F.3d at 789; Davis v. City of Newark, 417 F. App'x 201, 202 (3d Cir. 2011).  As above, Plaintiff need only "plead[] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of these elements.  Connelly, 809 F.3d at 789.

Defendants argue that Plaintiff has failed to adequately allege any of the three elements of a *prima facie* case of retaliation.  First, they argue that Plaintiff did not engage in protected activity.  "[P]rotected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'"  Daniels v. Sch. Dist. of Phila.,

---

discrimination necessarily survives a motion to dismiss so long as the requisite prima facie elements have been established.").

776 F.3d 181, 193 (3d Cir. 2015) (quoting Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir.2006). Defendants specifically argue that because Plaintiff has failed to state a claim for hostile work environment, her actions in reporting Callender's conduct does not qualify as protected activity. (ECF No. 28-4 at 16-17).

However, Defendants misstate the actual standard: "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[s]he was acting under a good faith, reasonable belief that a violation existed.'" Boykins v. SEPTA, 722 F. App'x. 148, 157 (3d Cir. 2018) (quoting Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996)). Accordingly, a plaintiff is not required to be correct that the conduct they reported was in fact a violation of Title VII or the NJLAD, so long as they reasonably believed it to be. Here, although the Court will dismiss Plaintiff's hostile work environment claims, it does so only after in-depth analysis, and will do so without prejudice out of recognition that Plaintiff may in fact be able to adequately state a claim. The Court has little trouble in finding that Plaintiff's allegations would support an objectively reasonable belief that Callender's inappropriate behavior towards her was unlawful under Title VII when she made complaints to Kiersnowski and Williamson.

25

Defendant next argues that "Plaintiff has never been subjected to any adverse employment action," because she was "never terminated or disciplined."  (ECF No. 28-4 at 18).  For an employer's action to qualify as an adverse employment action, however, the plaintiff does not need to have been terminated or disciplined; she simply "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Daniels, 776 F.3d at 195 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)); see also Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006) ("[A] plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'").

As Plaintiff points out, courts in this Circuit have previously recognized that "[a] negative performance review [can] be an adverse employment action." Stevens v. City of Philadelphia, No. CV 17-4853, 2018 WL 3328057, at *2 (E.D. Pa. July 6, 2018) (citing Rosati v. Colello, 94 F.Supp.3d 704, 718 (E.D. Pa. 2015)).  Similarly, courts have recognized that a transfer may constitute and adverse employment action.  The

26

Court recognizes that some courts in this circuit have previously rejected, on summary judgment, retaliation claims based on purely lateral transfers.  See Haynes v. Smith, 2006 WL 543645, at *9 (D.N.J. March 2, 2006) ("[W]here the transfer does not affect the 'job description or terms of employment' and has no 'objectively harmful or negative effects,' it cannot be said that the transfer 'was adverse or disparate.'"); O'Neal v. Brownlee, No. 03-5535, 2004 WL 2827052, at *6 (E.D. Pa. Dec. 9, 2004)("While in certain circumstances a transfer or reassignment may be materially adverse action,...a purely lateral transfer, which does not involve a change in pay or a demotion in any other form, does not constitute an adverse employment action.").

However, many of these cases were not only decided on summary judgment, rather than a motion to dismiss, they also pre-date the Supreme Court's clarification in Burlington N. & Santa Fe Ry. Co. v. White, 548U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) that Title VII retaliation claims do not require that an action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee" to be considered materially adverse.  See Moore, 461 F.3d at 341 (describing the Burlington decision and the new standard for materially adverse employment actions under Title VII).

27

Here, the Court finds that Plaintiff has sufficiently raised a reasonable expectation that she will be able to demonstrate an adverse employment action after discovery. Both negative performance reviews and transfers can, in certain circumstances, constitute adverse employment actions, and "a reasonable person in the plaintiff's position," having recently started a new job, might well be dissuaded from making further complaints about harassment after receiving a negative performance review or being transferred in response to the filing of previous complaints. While the Court again reaches no conclusion as to whether Plaintiff has demonstrated her *prima facie* case at this stage, she has at least raised a reasonable expectation that she will be able to at a later stage in this proceeding.[4]

The final question then is whether Plaintiff has pled sufficient allegations regarding the third element, a causal connection between the protected activity and the adverse employment action. Plaintiff acknowledges in her opposition

---

[4] In their reply brief, Defendants further argue that Plaintiff has not suffered an adverse employment action because she actually received a promotion and a raise, Callender was admonished, and she was encouraged to file an EEOC report. (ECF No. 31 at 7-8). However, none of these facts appear in the Amended Complaint, and are arguments more properly raised on a motion for summary judgment. As the Court may not consider extraneous evidence or facts that go beyond the allegations of the complaint on a motion to dismiss, it will not consider these arguments here.

brief that she is relying entirely on the temporal proximity between her reports and the two adverse actions to show a causal connection.  "To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" Daniels, 776 F.3d at 196 (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)).  However, when plaintiffs rely purely on temporal proximity, "'where the temporal proximity is not so close as to be unduly suggestive,' [they] have not alleged any facts from which a fact finder could reasonably discern" a causal connection.  Lasche v. New Jersey, No. 18-17552 (FLW)(TJB), 2019 WL 4727922, at *14 (D.N.J. Sept. 26, 2019).

Here, Plaintiff has put forth two separate adverse employment actions, with two different timeframes.  Plaintiff first alleges that after she started work on June 26, 2017, she quickly made a first complaint and then followed it with a second complaint either on July 7, or shortly thereafter; she then alleges that by mid-July, she received the negative performance review.  Such close temporal proximity between her complaints and the adverse employment action is "unduly suggestive" of a causal connection, and the Court therefore finds that Plaintiff has adequately pled her retaliation claim as to that allegedly retaliatory act.  Lichtenstein v. Univ. of

Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)
("'Although there is no bright line rule as to what constitutes
unduly suggestive temporal proximity,' the temporal proximity in
this case [one week] is in the realm of what this Court and
others have found sufficient at the prima facie stage.")
(quoting LeBoon, 503 F.3d at 233).

However, the same cannot be said of Plaintiff's transfer.
Plaintiff alleges that after receiving the negative career
progression report from Kiersnowski, she then reported
Callender's harassment to Williamson.  The Court finds that
Plaintiff has not raised a reasonable expectation that she will
be able to prove a causal connection after discovery.

Despite relying entirely on temporal proximity to support
her retaliation claims, "Plaintiff does not provide an exact
date on which the [report or transfer] occurred, so temporal
proximity cannot be precisely measured."  Yeakel v. Cleveland
Steel Container Corp., No. 09-5680, 2011 WL 536536, at *5 (E.D.
Pa. Feb. 15, 2011).  See also Reeder v. Hagan, 2020 WL 7699481,
at *6 (E.D. Pa. Dec. 28, 2020) (granting motion to dismiss
retaliation claim where Plaintiff did "not provide any dates for
when these events took place. It is impossible to determine
whether there is an unusually suggestive temporal proximity").
Given Plaintiff's allegation that she made the report to
Williamson following her receiving of the negative career

progression report in mid-July, it appears that, even viewing
the allegations in the light most favorable to Plaintiff, she
made the report to Williamson in July.  However, Plaintiff
alleges that she was not transferred to the Administration Unit
by Williamson until September.  Such a timeline would raise
significant doubt regarding temporal proximity, as the Third
Circuit has previously rejected arguments for causal connection
based on similar, and even shorter, temporal proximity
allegations.  See, e.g., Choy v. Comcast Cable Communications,
LLC, 629 F. App'x. 362, 365 (3d Cir. 2015) (holding that
"approximately six-week period fails to raise an inference of
causation"); Blakney v. City of Phila., 559 F. App'x. 183, 186
(3d Cir. 2014) ("We have found that a temporal proximity of two
days is unusually suggestive of causation, but have held that a
temporal proximity greater than ten days requires supplementary
evidence of retaliatory motive."); Moore v. Shinseki, 487 F.
App'x. 697, 698 (3d Cir. 2012) ("Two months is not so close to
be unduly suggestive of causation.").

Based only on the allegations currently found in the
Amended Complaint, and without knowing the specific amount of
time that passed between Plaintiff's report to Williamson and
her transfer, the Court simply cannot find that she has
sufficiently pled temporal proximity.  As that is the only basis
on which she supports her argument for a causal connection, she

therefore has not sufficiently pled her claim.  Accordingly, Defendants' motion to dismiss will also be granted without prejudice as to her retaliation claim based on her transfer.

**CONCLUSION**

For the reasons expressed above, Defendants' motion to dismiss (ECF No. 28) will be granted in part and denied in part. Plaintiff's retaliation claim based on her negative career progression report may proceed, and her Title VII claims against the individual defendants are dismissed with prejudice; all other claims are dismissed without prejudice.  Plaintiff will be granted leave to file an amended complaint addressing the deficiencies outlined in this Opinion within thirty days.

An appropriate Order will follow.


Date: April 12, 2021                    /s Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.